# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:14-CR-04-JVB-JEM |
| | ) | |
| RITA LAW, | ) | |
|     Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Motion to Disqualify Attorney Nejla Lane [DE 186], filed by the United States Government on March 29, 2016. Defendant Rita Law, by Attorney Nejla Lane, filed a response April 7, 2016, and on April 29, 2016, the Government filed a reply.

**I.**    **Procedural Background**

This criminal case against Rita Law commenced on October 17, 2013, when the Government filed a Complaint against Law for transporting for prostitution, and an arrest warrant was issued. On December 4, 2013, Attorney Lane, as Necla Lane, entered her appearance on behalf of Law, and on December 13, 2013, Law was arrested. On December 18, 2013, Attorney William T. Enslen entered his appearance on behalf of Law, and attended several hearings before moving to withdraw on Mach 13, 2014. Attorney Scott King entered his appearance on February 10, 2014, and represented Law until he moved to withdraw his appearance on August 26, 2014, stating that he had not been compensated per the terms of the written fee agreement.

On January 15, 2014, the Grand Jury returned a three count indictment against Law for trafficking, servitude, and transporting for prostitution, and on March 19, 2014, returned a superceding indictment adding a count of use of an interstate facility to promote prostitution. Attorney Lane remained counsel of record for Law, filing a number of motions and appearing at hearings, until she moved to withdraw on February 6, 2015. At that time, Attorney Lane represented

that several other attorneys had entered their appearance on Law's behalf, that Lane had received no communication from Law for several weeks, and that Lane had not been paid by Law pursuant to their legal representation agreement.

On February 4, 2015, Attorneys Sheldon Sorosky, James Hyun, and David Kerstein entered their applications to appear pro hac vice on behalf of Law. On June 3, 2015, all three moved to withdraw, with a supplemental motion filed on June 28, 2015. The attorneys represented that there were irreconcilable differences with Law and that she refused to sign a document releasing funds to pay for legal work on her behalf. On July 1, 2015, the Court held a hearing granting the motion to withdraw and appointing counsel for Law. On July 9, 2015, Attorney Paul Stracci entered his appearance on behalf of Law, and on January 4, 2016, Attorney Alison Benjamin entered her appearance. At this time, Attorneys Stracci and Benjamin remain counsel of record for Law.

On January 27, 2016, the Government filed a motion for a competency hearing. Law's attorneys filed a response agreeing that a competency examination would be appropriate. On March 1, 2016, after holding a hearing and providing time for her attorneys to meet with Law, the Court granted the request. On April 7, 2016, Law arrived at the facility at which the competency exam is taking place, with the report to be submitted to the Court by May 21, 2016.

On March 3, 2016, Attorney Lane, as Nejla Kassandra Lane, again entered her appearance on behalf of Law. Judge Joseph S. Van Bokkelen held a status conference on March 9, 2016, and addressed the question of attorney representation. The Government objected to Attorney Lane's representation of Law, and was ordered to file a motion addressing her alleged conflict of interest. That motion is now fully briefed and before the Court.

## II. Factual Background

The individual known in this case as XC was arrested at Defendant Law's place of business on September 3, 2013. The Government asserts that Law hired Attorney Lane to assist in having XC removed to Taiwan. Law and Lane signed a document entitled Power of Attorney & Authorization to Release Information, dated September 26, 2013, giving Rita Law, as the client, power of attorney to Nejla K. Lane to act on her behalf "regarding any and all matters as deemed necessary to conduct legal affairs." Gov't Ex. 5. [DE 193-1]. On September 30, 2013, Attorney Lane visited XC at the Lake County Jail, bringing Law with her, purportedly as a translator. At that meeting, XC signed a Department of Homeland Security G-28 Form authorizing Attorney Lane to represent XC and receive copies of XC's immigration-related records.

On October 2, 2013, Attorney Lane faxed a copy of XC's passport and the signed G-28 form to a Homeland Security Agent to obtain access to XC. Lane knew that Defendant Olszewski had possession of XC's passport at least during the time period immediately preceding October 2, and obtained it from him on or a few days prior to faxing a copy to Homeland Security.

In the fall of 2014, while counsel of record for Law, Attorney Lane prepared an affidavit for witness Gary Toma, submitted by Attorney Lane to Hong Kong in opposition to the Government's request for a Waiver of the Rule Specialty. Upon later review of the affidavit – which he now states that he signed without carefully reading – Toma said that he identified false factual assertions that were not based on statements he gave Attorney Lane.

### III. Analysis

The Government requests that the Court disqualify Attorney Lane from representing Law at trial because of her likely role as a necessary witness at trial and her failure to obtain the written consent of her former client before entering her appearance on behalf of Law. Attorney Lane

3

objects, arguing that Law is entitled to the representation of her choice and that Law is available as another witness to the testimony sought from Attorney Lane at trial.

The Sixth Amendment to the United States Constitution guarantees the right to representation to all criminal defendants. *See Wheat v. United States*, 486 U.S. 153, 159 (1988). They "are guaranteed effective assistance of counsel, and have the right to representation free from conflict of interest." *United States v. Lafuente*, 426 F.3d 894, 897 (7th Cir. 2005) (citing *Hall v. United States*, 371 F.3d 969, 973 (7th Cir. 2004). However, the Sixth Amendment does not ensure that a Defendant will inexorably be represented by a lawyer of his choice. *Wheat*, 486 U.S. at 159. "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. at 160. While the court "must recognize a presumption" in favor of a criminal Defendant's counsel of choice, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id*. at 164.

Thus, "[a]lthough a person has the right to be represented by the counsel of his choice, '[t]his right is not absolute, but qualified, and must be balanced against the requirements of the fair and proper administration of justice.'" *United States v. Carrera*, 259 F.3d 818, 824-25 (7th Cir. 2001) (quoting *United States v. Micke*, 859 F.2d 473, 480 (7th Cir. 1988)). In addition to the rights of the defendant, the interests of the Government in the Court in a fair trial must be considered. *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993) ("The question of disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial.") (*citing Wheat*, 486 U.S. at 160). Accordingly, "[i]n seeking to disqualify a

defendant's chosen counsel, the government bears a heavy burden of establishing that concerns about the integrity of the judicial process justify the disqualification." *Micke*, 859 F.2d at 480 (quoting *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986)). And even when an actual conflict of interest exists, there is no *per se* rule of disqualification. *United States v. O'Malley*, 786 F.2d 786, 790 (7th Cir. 1986). "[T]he decision to disqualify an attorney in a criminal case requires an evaluation of the interests of the defendant, the government, the witness and the public in view of the circumstances of each particular case." *Id*.

    A.    <u>Rule 3.7</u>

The Government cites to two rules of conduct that disqualify Attorney Lane from representing Law at trial. The first is Rule 3.7(a), which provides:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Ind. R. Prof. Cond. 3.7(a).

The Government asserts that Attorney Lane is a witness to four specific areas of testimony based on her personal knowledge. Lane argues that she is not the only possible witness to any of those areas, and therefore is not a necessary witness for the Government.

First, the Government asserts that it will present evidence that Law hired Attorney Lane to represent XC for the purposes of having her deported to Taiwan so that she could not testify against Law in this case. The Government states that it intends to argue that Law's hiring of Attorney Lane to facilitate the deportation of XC to Taiwan is relevant to Law's pattern of behavior and

5

consciousness of guilt, and that Lane is the only witness the Government can call at trial to confirm that she was hired by Law to have XC deported to Taiwan. Attorney Lane argues that at the time Law accompanied Lane to the jail to translate for XC, the visit at which the attorney-client agreement between Law and XC was formed, Law was not Lane's client, so there was no conflict. The Government asserts that Law and Lane confirmed their attorney-client relationship before the trip to the jail, and the client agreement attached to its reply backs up their claim. *See* Gov't Ex. 5 [DE 193-1]. Attorney Lane argues that any testimony regarding the scope or nature of Lane's representation would be protected by attorney-client privilege, but the Government asserts that Lane's communications with Law are exempted from the privilege by the crime/fraud doctrine, since Law hired Lane to perform legal services aimed at having XC deported.

The Government also argues that Lane is a necessary witness to the conversation between Law and XC at the jail. Attorney Lane argues that she cannot be considered a necessary witness to that conversation because it took place entirely in a language Lane does not understand, and because Law can also testify as to what occurred. The Government argues that Lane's assertion that she is not the only possible witness to these conversations is unavailing because Law, the only other potential witness, cannot be compelled to testify at her own criminal trial. Furthermore, although she may not be able to testify about the content of the conversation, Lane can testify as to her personal observations during the conversation at the jail: whether Law spoke only as a translator or communicated independently with XC; the demeanor of the two other women; and the body language of Law and XC, among other things. As the Government argues, her ability to corroborate or contradict the testimony of XC about what took place during that conversation makes her an important witness for either the prosecution or the defense.

6

Next, the Government asserts that Lane has specific knowledge about the whereabouts of XC's passport at the time of her arrest. The Government alleges that Law took away XC's passport, and argues that Lane has information about the location of that passport after XC's arrest. Lane said that she does not have personal knowledge of the whereabouts of XC's passport on September 3, 2013, and that because Defendant Olzewski can also testify as to when he gave her the passport, she is not the only possible witness to that information. However, as the Government points out, Lane has not identified any third party who witnessed her conversations with Olszewski about the passport, so she may be either a corroborating or contradicting witness to his testimony.

In addition, the Government asserts that Lane is a necessary witness to the events surrounding the drafting of the Toma affidavit. Lane argues that all conversations she had with Toma were in the presence of a private investigator, and that since two other people were present for the conversations, she is not a necessary witness to them. The Government represents that Toma was unaware of the involvement of an investigator, and that Attorney Lane has refused to provide the identity of that investigator. Furthermore, the Government argues that the presence of a third party for the phone conversations does not mean that Attorney Lane is not a necessary witness, since she admits to revising the affidavit after it was prepared by the investigator and before being sent to Toma. In addition, her testimony may be necessary to corroborate or contradict the testimony of the investigator even if he is identified and testifies.

Attorney Lane also argues that the Government should have raised the issue of her being a necessary witness prior to her initial withdrawal from the case. The Government argues that the conflicts addressed herein were not ripe at that time. Rule 3.7(a) only addresses conflict in the context of trial preparation, but at that time the parties were engaged in plea negotiations.

7

Furthermore, it was not confirmed that the case would be proceeding on the forced labor offenses that implicate Lane's testimony until Hong Kong's ruling on the Government's request for a waiver of the rule of specialty was granted, after Attorney Lane's appearance was withdrawn. The Government appropriately raised its concerns about Attorney Lane's potential conflict of interest almost immediately upon her re-entering her appearance in this case.

Ms. Lane is likely to be called as a witness at trial to testify to at least one, if not all, of those areas of testimony. Even if some of the potential testimony would be protected by the attorney-client privilege, or offered by the defense rather than the prosecution, it appears that she will be a necessary witness at trial. That testimony will not be about an uncontested matter or about an issue of representation such as the nature and value of her legal services; instead, Ms. Lane's testimony would be used to corroborate or contradict other evidence - potentially from several different witnesses.

In addition, Law will not suffer substantial hardship if Attorney Lane is disqualified. Although Law initially chose Attorney Lane to represent her in the beginning of this case, there was a breakdown of communication sufficient to require Attorney Lane to withdraw her representation. Law has received representation from several other attorneys since then. Since July, she has been represented by a Court-appointed attorney willing to continue in diligent representation without receiving payment from Law – an issue which appears to have caused some significant disruption in her past continuity of representation. Attorney Lane only recently re-entered her appearance in this case after having been absent from it for over a year and, per her own representation, out of touch with her client for at least several weeks prior to her request to withdraw. Law's current attorneys have been involved in trial preparation that has not involved Attorney Lane, and to the

8

extent that the two have some sort of personal relationship she is certainly not foreclosed from providing emotional support to Law.

The Court is also sympathetic to the Government's concerns that Attorney Lane's representation of Law at trial may hinder her right to ardent representation. Because of the important rights of the other defendants and the witnesses in this case, presiding District Judge Joseph Van Bokkelen has expressed his intent to proceed to trial without unnecessary delay, and has warned that continued switching of attorneys by Law will not be sufficient to override these other concerns. The relatively brief time anticipated before trial could rush Attorney Lane's preparation. Furthermore, if Lane is a necessary witness to Law's defense but cannot take the stand as Law's attorney, that could deny due process to Law. Attorney Lane's ethical obligations to XC could prevent vigorous cross-examination of her, or the jury may be suspicious of Attorney Lane when they realize that she brought Law to visit XC in jail while representing both of them. Any of these scenarios, although speculative at this point, is plausible and could result in Attorney Lane providing ineffective assistance of counsel to Law.

B.     Rule 1.9(a)

The Government also argues that Indiana Rule of Professional Conduct 1.9 prohibits Attorney Lane's representation of Law because of the conflict of interest with Attorney Lane's prior client, known in this case as victim XC, who has not waived the conflict. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent in writing.

Ind. R. Prof. Cond. 1.9(a).

9

In this case, Attorney Lane previously represented XC, a material witness for the Government in this case. The Court previously recognized the conflict of interest inherent in allowing Attorney Lane to represent both XC and Law in this matter, appointing a different attorney for XC, and the conflict will be even more concerning if Attorney Lane must cross-examine her former client at trial. Furthermore, there is absolutely no indication that XC, Attorney Lane's former client, will give informed consent in writing to waiving the conflict. Indiana Rule of Professional Conduct 1.9(a) uses the term "shall not" and is accordingly an imperative, not a permissive, rule. *See* Ind. R. Prof. Cond. Preamble ¶ 14 ("Some of the rules are imperative, cast in the terms of 'shall' and 'shall not.' These define proper conduct for purposes of professional discipline. Others, generally cast in the term 'may' are permissive and define areas under the Rules in which the lawyer has discretion to exercise professional judgment.") Accordingly, Indiana Rule of Professional Conduct 1.9(a) prohibits Attorney Lane from representing Law at trial.

The Court recognizes the important right of a defendant to the representation of her choice. The presumption in favor of the right is rebuttable by conflict of interest or the serious potential of a conflict of interest, and both exist in this case. Indiana Rule of Professional Conduct 1.9(a) prohibits Attorney Lane from representing Law in the same matter in which her interests are materially adverse to the interests of XC, a former client, without informed consent from XC - consent she cannot obtain. Furthermore, Attorney Lane is likely to be called by the Government as a necessary witness to at least one but potentially several subject areas in this case, and may also be a necessary witness for Defendant Law or one of the other defendants in this case. Although loss of her choice of counsel may create some measure of hardship to Law, that hardship is mediated by

the presence of other counsel who have competently represented Law for a significant period of time and have been working diligently to prepare for trial.

**IV.     Conclusion**

For the foregoing reasons, the Motion to Disqualify Attorney Nejla Lane [DE 186], is hereby **GRANTED**. The Court **ORDERS** that Attorney Nejla K. Lane is disqualified to further represent Defendant Rita Law in this matter and **DIRECTS** the Clerk of Court to terminate the appearance of Attorney Nejla K. Lane as attorney of record for Defendant Rita Law on the docket for this case.

SO ORDERED this 6th day of May, 2016.

                                             s/ John E. Martin
                                            MAGISTRATE JUDGE JOHN E. MARTIN
                                            UNITED STATES DISTRICT COURT

cc:     All counsel of record
        Attorney Nejla Lane